# United States Court of Appeals
## For the First Circuit

---

No. 01-2160

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN A. SACCOCCIA, ET AL.,

Defendants, Appellants.

---

No. 01-2170

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN A. SACCOCCIA, ET AL.,

Defendants, Appellants.

---

No. 01-2393

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN A. SACCOCCIA, ET AL.,

Defendants, Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

————————————

Before

Howard, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges,

————————————

Lauren E. Jones, with whom Mark L. LaBollita and Jones Associates were on brief for appellants Hill and O'Donnell.
Stephen J. Finta, with whom Law Offices of Stephen J. Finta, P.A. was on brief for appellant Finta.
Michael P. Iannotti, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Michael E. Davitt, Deputy Chief, United States Department of Justice, were on brief for appellee.

————————————

December 22, 2003

————————————

**CYR, Senior Circuit Judge.**   Three attorneys who represented Stephen A. Saccoccia — a convicted drug dealer and money launderer — appeal from a district court order directing that they forfeit some of their attorney fees to the government.

## I

### BACKGROUND

The grand jury returned an indictment against Stephen A. Saccoccia in November 1991, charging him with one count of conspiracy under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963(d) (RICO), as well as several counts of laundering proceeds from an illegal drug trafficking operation. See United States v. Saccoccia, 58 F.3d 754 (1st Cir. 1995). The government also sought the forfeiture of all the business and personal property directly or indirectly derived from Saccoccia's racketeering activities, explicitly including almost $137,000,000 in currency, and, in the alternative, sought the surrender of all non-tainted property of equivalent value (if any) should Saccoccia's tainted property have become unavailable. See 18 U.S.C. §§ 1963(a), (m). The district court promptly enjoined the transfer of the forfeitable property designated in the indictment. See id. § 1963(d)(1)(A).

Saccoccia retained Jack Hill, Esquire, and Kenneth O'Donnell, Esquire, to defend him in the RICO prosecution; he retained Stephen Finta, Esquire, to defend him against money

3

laundering charges pending in California. We turn now to a more detailed description of the district court proceedings below.

Beginning in March 1992, under rather suspicious circumstances, Saccoccia caused $504,985 to be delivered to Hill, $410,000 to O'Donnell, and $469,200 to Finta, all for legal fees. Approximately one year later, Saccoccia was convicted and ordered to forfeit the $137,000,000 in currency specified in the indictment. We subsequently affirmed both the conviction and the forfeiture. Saccoccia, 58 F.3d at 754; see also United States v. Hurley, 63 F.3d 1 (1st Cir. 1995). Once the government discovered that Saccoccia had paid large legal fees to Hill, O'Donnell, and Finta, it submitted a motion to compel them to turn over the fees as property subject to forfeiture.

The district court granted the motion to compel, United States v. Saccoccia, 165 F. Supp. 2d 103 (D.R.I. 2001), holding that (i) the government established that the legal fees paid to the appellants must have derived from Saccoccia's racketeering activity, given that Saccoccia had no legitimate sources of income, and the legal fees were paid "under especially suspicious circumstances" (viz., by "covert deliveries of large quantities of cash, made by anonymous intermediaries"), id. at 111-12; (ii) appellants met their burden of proving that they had no reasonable cause to believe that the monies Saccoccia used to pay their fees, prior to Saccoccia's conviction, were subject to forfeiture, given

4

that an Assistant United States Attorney's pre-conviction assurances to appellants — that the government would not seek forfeiture of their legal fees — implied some government uncertainty regarding whether Saccoccia might possess sufficient non-tainted assets with which to pay his attorneys, id. at 112 (citing 18 U.S.C. § 1963(c)); (iii) following the trial at which Saccoccia was convicted, appellants could not have held a reasonable belief that Saccoccia's assets were not subject to forfeiture, given that the trial record made it clear that virtually all of Saccoccia's assets had been derived through illegitimate means, id. at 112-13; (iv) appellants were ordered to turn over only the portion of their legal fees received following Saccoccia's conviction, id. at 113; and (v) the government could not reach their pre-conviction legal fees by means of the district court's contempt power due to the fact that the government had initiated no such proceeding and the district court had already determined that appellants lacked reasonable cause to believe that the pre-conviction legal fees were subject to forfeiture, hence appellants could not have violated the post-indictment injunction willfully, id. at 113-14.

Appellants now challenge the district court order which determined that their post-conviction legal fees are subject to

5

forfeiture.[1]

## II

## <u>DISCUSSION</u>

Appellants Hill and O'Donnell contend, as they did in opposing the government's motion to compel below, that the forfeiture statute does not permit the government to reach the legal fees they received from Saccoccia, due to the fact that those fees have been expended. We subject statutory interpretations to plenary review. <u>See</u> <u>Bryson</u> v. <u>Shumway</u>, 308 F.3d 79, 84 (1st Cir. 2002).[2]

The operative statutory language requires that a defendant forfeit "tainted" property, <u>viz.</u>, property (i) acquired by committing the offense, and (ii) "constituting, or derived from, any proceeds . . . obtained, directly or indirectly" from its commission. 18 U.S.C. § 1963(a)(1),(3).[3] Once an indictment

---

[1]For its part, the government has not cross-appealed from the district court ruling that the legal fees appellants received prior to the Saccoccia conviction are not subject to forfeiture.

[2]As the forfeiture provisions prescribed by RICO are substantially similar to the criminal forfeiture provisions in 21 U.S.C § 853, we cite cases interpreting § 853 as persuasive analogous authority. <u>See</u> <u>United States</u> v. <u>Hooper</u>, 229 F.3d 818, 821 n.7 (1st Cir. 2000).

[3]For instance, the profits Saccoccia derived from the drug conspiracy would be subject to forfeiture under subsection (1). Were Saccoccia to use some of the drug profits to purchase a boat for $50,000, the boat would be forfeitable, under subsection (3), as property "derived from" tainted proceeds, even though not utilized in the conspiracy.

issues, the district court may enjoin the transfer of all property "subject to forfeiture under [section 1963]." Id. § 1963(d)(1). In the event that tainted property is unavailable for forfeiture (as when it has been transferred to a third party),[4] the government may recover "substitute" property, viz., defendant's other untainted property of equivalent value. See id. § 1963(m); United States v. Lester, 85 F.3d 1409, 1411 n.3 (9th Cir. 1996) ("'[S]ubstitute property,' . . . by its very nature is 'not connected to the underlying crime.'") (citation omitted).[5]

The operative statute enables the government to recover from the defendant "tainted" or "substitute" property in a defendant's possession, or "tainted" property held by a third party by virtue of a voidable fraudulent transfer. Id. § 1963(c).[6] A third party may petition the court for a hearing to determine the validity of its legal interest in tainted property, id. § 1963(l)(2), and may defeat a forfeiture petition by establishing,

---

[4]Tainted property may be unreachable if it "(1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be divided without difficulty." 18 U.S.C. § 1963(m).

[5]The original district court forfeiture order against Saccoccia was amended to include his substitute assets based on evidence that Saccoccia was in the process of transferring tainted assets. See Saccoccia, 58 F.3d at 783.

[6]Subsection 1963(k) accords the government extraordinary discovery rights in identifying and locating forfeitable property.

inter alia, that it is a bona fide purchaser for value, "reasonably without cause to believe" that the property was subject to forfeiture at the time it was purchased, id. § 1963(l)(6)(B).

Nonetheless, the "substitute property" provision is exclusively applicable to "any other property of the defendant." Id. § 1963(m) (emphasis added). The statutory language plainly does not afford an avenue through which the government may reach a third party's untainted assets as a substitute for tainted assets which the third party had already transferred prior to the date of forfeiture. See Bryson, 308 F.3d at 84 ("If the meaning of a statute is clear, we enforce that meaning."); United States v. Meade, 175 F.3d 215, 219 (1st Cir. 1999) (noting that when "the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction."); see also Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 61 (1st Cir. 2001) ("[T]he maxim expressio unius est exclusio alterius instructs that, 'when parties list specific items in a document, any item not so listed is typically thought to be excluded.'") (citation omitted).[7]

---

[7]The government's contrary argument relies primarily upon one unpublished decision as "persuasive authority." United States v. McCorkle, No. 6:98-CR-52-ORL-19C, 2000 WL 133759 (M.D. Fla. Jan. 14, 2000) (holding that government could recoup attorney's other property where he had already dissipated the tainted legal fees); see also 1st Cir. Local R. 32.3(b). However, McCorkle contains neither an analysis of the pertinent statutory provisions, nor any other authority supporting its conclusory holding. Indeed, McCorkle erroneously cites United States v. Moffitt, Zwerler &

The government does not contend that it can recover the "tainted" property already transferred to Hill and O'Donnell by Saccoccia (i.e., the in-cash legal fees), nor does it maintain that either Hill or O'Donnell presently holds any property fairly traceable to, or acquired with the proceeds of, their legal fees. Rather, it argues that its right to recover derives from the knowing violations, by Hill and O'Donnell, of the post-indictment injunction entered pursuant to § 1963(d)(1), which constrained Saccoccia and his counsel from transferring any funds subject to forfeiture under subsection 1963(a). Cf. United States v. Moffitt, Zwerling & Kemler, 864 F. Supp. 527, 530-31 (E.D. Va. 1994) (finding assets non-forfeitable where transfers to counsel occurred prior to injunction); id. at 544 n.46 ("Where an attorney accepts payment in violation of such a restraining order, the government can recover regardless of the fact that the attorney has dissipated the funds."), rev'd on other grounds, 83 F.3d 660 (4th Cir. 1996).

The absence of language in subsection 1963(m), relating to the forfeitability vel non of a third party's substitute assets, simply forecloses one form of remedy, not all. Relief from a

---

Kemler, 83 F.3d 660, 667-70 (4th Cir. 1996), for the proposition that the forfeiture statute "does not abrogate the government's right to recover attorneys' fees that have been dissipated by a third party law firm," McCorkle, 2000 WL 133759, at *3 (citing Moffitt, 83 F.3d at 666-69), even though Moffitt found the basis for the government's potential recovery not in the forfeiture statute's "substitute asset" provision, but in an extra-statutory claim for common-law conversion, see infra.

9

willful violation of a subsection 1963(d)(1) injunction may be obtained in a contempt proceeding. See United States v. Kirschenbaum, 156 F.3d 784, 795 (7th Cir. 1998). On the other hand, the government's initiation of contempt proceedings would significantly alter its burden in litigation. Whereas subsections 1963(c) and (l)(6) require the third party to establish that it was without reasonable cause to believe that the transferred property was subject to forfeiture under subsection 1963(a), in a criminal or civil contempt proceeding the government would bear the burden of persuasion on that issue. In a criminal contempt proceeding, moreover, the government's burden of proof would be beyond-a-reasonable-doubt, see Fed. R. Crim. P. 42; United States v. Mourad, 289 F.3d 174, 180 (1st Cir.), cert. denied, 123 S. Ct. 337 (2002); and in a civil contempt proceeding, clear and convincing evidence would be required, see AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001). See generally United States v. Marquado, 149 F.3d 36, 39-40 (1st Cir. 1998) (describing salient differences between criminal and civil contempt proceedings). The district court noted, however, that "the government is not seeking to hold the attorneys in contempt." Saccoccia, 165 F. Supp. 2d at 114.

Additionally, subsection 1963(m) would not preempt various remedies otherwise available to the government outside the forfeiture statute, which would maximize its monetary recovery from the substitute assets of culpable third parties. See United States

10

v. Moffitt, Zwerling & Kemler, 83 F.3d 660, 667-70 (4th Cir. 1996) (holding that § 1963(m) does not preempt state common-law claims that enable the government to reach a third-party transferee's substitute assets).  For instance, since the government's right, title, and interest in all tainted property "relates back" to the date Saccoccia committed the relevant acts, see 18 U.S.C. § 1963(c) ("All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to the forfeiture."), presumably it could initiate a state-law proceeding against Hill and O'Donnell for conversion of such property, and recover compensatory damages from their non-tainted assets.  See Fuscellaro v. Indus. Nat'l Corp., 368 A.2d 1227, 1230 (R.I. 1997) ("[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right of possession.").  However, had the government brought such a tort claim in the district court, the claim presumably would be adjudicated under substantially different standards than a claim under subsection 1963(a) or (m), since the government would bear the burden of proof, and appellants might be entitled to additional procedural safeguards under state law, such as a right to jury trial.  See, e.g., Ross v. Bernhard, 396 U.S. 531, 533 (1970); Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993);

11

Russell v. City of Bryan, 919 S.W.2d 698, 704 (Tx. App. 1996); Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank, 910 P.2d 1308, 1320 (Wash. Ct. App. 1996).

At first blush, the present holding may appear to diverge from the stated legislative intent to accord the government extremely aggressive forfeiture remedies so as to preclude criminals from realizing the monetary benefits of their crimes. See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 631 (1989). On the other hand, the very potency of the forfeiture power demands that it be reasonably contained within ascertainable limits. Thus, for example, Congress provided that a non-defendant third party with rights in forfeitable property may redeem its interest by establishing either (i) that it predated the defendant's crime, see United States v. Lester, 85 F.3d 1409, 1414 (9th Cir. 1996) (holding that non-defendant spouse had non-forfeitable pre-existing interest in jointly-held property), or (ii) that it subsequently acquired a non-forfeitable interest under a bona fide purchase for value, see 18 U.S.C. § 1963(l)(6).

The implicit limitation in § 1963(m) — the "substitute assets" provision — that the government may reach only the defendant's substitute assets and not those of a third party – is similar in nature. Forfeiture is an in personam criminal remedy, targeted primarily at the defendant who committed the criminal offense. See Lester, 85 F.3d at 1414 n.8 (noting crucial

12

distinction between _in personam_ judgment in criminal forfeiture proceeding and _in rem_ judgment in civil forfeiture proceeding).

Finally, the implicit limitation in § 1963(m) does not trammel the basic statutory policy by foreclosing all other remedies available to the government, nor does it enable culpable attorneys to dissipate tainted fees with impunity. Rather, the government may utilize its enforcement powers under subsection 1963(k) to "trace" tainted funds, _see_ _supra_ note 6, thereby disproving the contention that appellants' cash-on-hand is neither the tainted fees, nor other property directly or indirectly derived from the tainted fees. Furthermore, absent such evidence, the government may reach other non-tainted cash of the attorneys by sustaining the somewhat weightier, though not insurmountable, burden of establishing the elements of either contempt or conversion.

As our construction of the language utilized in the forfeiture statute is one of first impression, the forfeiture award against Hill and O'Donnell must be vacated and the case must be remanded to the district court for further proceedings consistent with this opinion. Upon remand, the government is to be accorded a reasonable opportunity to determine whether it intends to institute contempt proceedings or submit conversion claims against

appellants.[8]

**Accordingly, the district court order directing appellants Hill and O'Donnell to surrender their post-conviction legal fees is hereby vacated, and the case is remanded for further proceedings consistent with this opinion. The order to compel**

---

[8]Unlike Hill and O'Donnell, Finta failed to raise the "substitute assets" issue on appeal. Further, Finta's arguments on appeal are meritless. First, he argues that we lack appellate jurisdiction because the district court did not reduce its final judgment of forfeiture to a separate document, as required by Federal Rule of Civil Procedure 58. Assuming arguendo that Rule 58 would apply to a criminal forfeiture proceeding against non-defendants, but see Fed. R. Crim. P. 32.2(c), Finta unquestionably waived the "separate document" rule by appealing from the district court's July 31, 2001 judgment without objection from the government. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 385 (1978) ("If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose."); Fiore v. Washington County Cmty. Health Ctr., 960 F.2d 229, 235 (1st Cir. 1992).
Second, Finta contends that the district court decision violated his Fifth Amendment rights to notice and to confront witnesses, by relying upon evidence introduced at the Saccoccia criminal trial in which Finta did not participate. This argument has been forfeited by Finta's failure to raise it below. See Brigham v. Sun Life of Can., 317 F.3d 72, 85 (1st Cir. 2003). Moreover, given Finta's close involvement with and representation of Saccoccia during the relevant time periods, as well as his decision not to adduce further evidence to undermine the trial record at his forfeiture hearing, we discern no plain error.
Finally, Finta contends that, without the evidence derived from the alleged Fifth Amendment violations, there was insufficient evidence from which the district court could conclude that he had reasonable cause to believe that the legal fees he received following Saccoccia's conviction were tainted. Not only does this contention fail like his second claim, but Finta, not the government, bore the burden to adduce sufficient evidence on this pivotal issue. See 18 U.S.C. § 1963(l)(6)(B).

14

**appellant Finta to surrender $242,000 in post-conviction legal fees is hereby affirmed.  SO ORDERED.**